**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RAMONT LAMONT ADAMS, | : | MOTION TO VACATE |
| Movant, | : | 28 U.S.C. §2255 |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:19-CR-217-TCB-JSA-1 |
| UNITED STATES, | : | |
| Respondent. | : | CIVIL ACTION NO. |
| | : | 1:22-CV-1337-TCB-JSA |

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Movant Ramont Lamont Adams has filed the instant *pro se* motion, two amended motions, and two supplemental motions to vacate pursuant to 28 U.S.C. §2255.   (Docs. 122, 125, 127, 128, 129).   Movant seeks to challenge the constitutionality of his convictions and sentences following his guilty plea in the Northern District of Georgia.

I.   Procedural and Factual History

A.   Facts[1]

D.P., a former inmate at the United States Penitentiary in Atlanta, Georgia ("USP-Atlanta"), reported to prison officials that he had been robbed and sexually

---

[1]   Unless otherwise indicated, these facts were relayed by the Government during the plea hearing as the factual basis of Movant's guilty plea, to which Movant agreed.  (Doc. 117 at 8-14).

assaulted by other inmates on September 22, 2017.[2]  A surveillance camera at USP-Atlanta showed that at 10:19 a.m. D.P., who was confined to a wheelchair, wheeled himself into his cell and one minute later three inmates entered the cell and closed the door behind them.  Those inmates were identified as Movant, Roman Brown, and Lorenzo Harris, all three of whom were empty-handed when they went into D.P.'s cell.  The surveillance video showed that eight minutes later all three inmates, including Movant, walked out of D.P.'s cell, Brown and Harris each were carrying a plastic or commissary bag, and it was very clear from the video that they were taking something from the cell.

D.P. told FBI agents that after he entered his cell he felt an arm around his neck and at first thought it was a prank played on him by an inmate who was sort of his friend, but quickly realized it was not a joke and that the person who had his arm around him had dreadlocks, and who subsequently was identified as Roman Brown. As D.P. realized that Brown had two other inmates with him, Brown restrained D.P.'s wrists while he was still seated in the wheelchair.

At some point D.P. was pulled backwards onto his back by whom he identified as Movant since Movant is physically larger than the other two inmates, and at that

---

[2]      In the beginning of the factual recitation the Assistant United States Attorney mistakenly stated that the date was October 22, 2017.  (Doc. 117 at 8).

point he briefly lost consciousness.[3]  When he came to, he was face down on his bunk and Lorenzo Harris was searching the wheelchair pockets and was asking "where's the shit, where are the stamps?"  D.P. then heard one of the inmates say something to the effect of "stick him, make him talk."  After that statement D.P. realized that his pants were down, and he could feel an unidentified object penetrating his anus.  Meanwhile, Harris continued to ask D.P. for stamps, and he told Harris that the stamps were in a bag on his wheelchair.

D.P. could see Brown and heard Brown tell the other two inmates to let him breathe, which D.P. believed may have deescalated the situation.  As the assault ended, someone dropped the object with which D.P. was assaulted onto the ground. D.P. briefly saw the object, which he described as beige, partially wrapped in a sheet, and approximately six to seven inches long with a sharp end, and which he thought was part of a broken lunch tray.  The object apparently was never recovered.

D.P. saw the inmates put several items in bags which they took with them.  As they left the cell, one of the inmates told D.P. that if he reported the incident they would go after his family.  According to D.P., the inmates stole a ring, a watch, his

---

[3]     According to the Presentence Investigation Report, evidence suggested that Movant placed D.P. in a chokehold and choked him to the point of unconsciousness. (Doc. 92 ("PSR") ¶11).  When D.P. regained consciousness his head and chest were on the bed and he was being held down by the back of his neck.  (*Id.*).

eyeglasses, a radio, headphones, six books of stamps, his address books, and several packs of commissary coffee, which he sold in his cell.

D.P. first reported at 8:00 p.m. that evening that he had been attacked from behind by another inmate and stated that his neck hurt and his pain was at a level 3 out of 10 on a pain scale. He was placed on suicide watch because he indicated that he was having suicidal thoughts, and was assessed by psychological services the next day. D.P. disclosed to the psychologist that he had been sexually assaulted, that he did not initially mention it because he was ashamed and embarrassed, and that he only stated that he had suicidal thoughts because he was afraid he otherwise would not have been moved into protective custody.

A second nurse examined D.P. on September 23, 2017. D.P. told the nurse that he had neck and back soreness and burning pain and bleeding from his rectum. A physical examination showed that D.P.'s rectum was red and there was a small amount of blood on a tissue he had placed in his rectum. Movant was taken to Grady Memorial Hospital for further medical attention. (PSR ¶16).

### B.   Procedural History

On June 11, 2019, a grand jury in the Northern District of Georgia charged Movant and the two other inmates with one count of conspiracy to commit robbery in violation of 18 U.S.C. §2111(a), one count of robbery in violation of 18 U.S.C. §§7(3), 2111, and 2, and one count of aggravated sexual abuse in violation of 18

U.S.C. §§7(3), 2241(a)(1), and 2.[4]   (Doc. 1).   On December 8, 2020, while represented by Eileen Moorman, Movant entered a guilty plea to the robbery and aggravated sexual abuse charges pursuant to a plea agreement.   (Docs. 72, 72-1 ("Plea Agreement")).

Therein, Movant and the Government agreed that:   Movant would receive an offense adjustment for acceptance of responsibility [Plea Agreement ¶14]; the Government would dismiss the conspiracy count in exchange for the plea [*Id.* ¶11]; neither party would request any sentence outside of the guidelines range [*Id.* ¶25]; and the Government would recommend a sentence at the low end of the adjusted guideline range [*Id.* ¶17].   Movant agreed that the recommendations, stipulations, and guideline computations were not binding on the Court [*Id.* ¶26], and the plea agreement contained an appellate and collateral waiver which provided that Movant waived his right to file an appeal and collaterally attack his conviction and sentence in any post-conviction motion – including a motion under §2255 – on any ground, except for an upward departure or variance from the guideline range or for ineffective assistance of counsel claims [*Id.* ¶27].   During the plea colloquy and in the plea agreement, Movant affirmed that he had read the agreement in its entirety, carefully reviewed every part of it with his attorney, understood the terms and

---

[4]   The original indictment also named another inmate, D'Angelo Rashad Palmer, as a codefendant; however, on August 14, 2019, the grand jury returned a superseding indictment which removed Palmer therefrom.   (Docs. 1, 21).

conditions in the agreement and voluntarily agreed to them, and was fully satisfied with his counsel's representation.  (*Id.* at 13; *see generally* Doc. 117 ("Plea Tr.")).

Also during the plea colloquy, Movant stated under oath that:  he understood the constitutional rights he was waiving by pleading guilty; he understood that he was entering a plea to robbery and aggravated sexual abuse and the consequences thereof, including a potential maximum penalty of fifteen years for aggravated sexual abuse and a maximum penalty of life for robbery; his decision to plead guilty was not the product of threats, force, or promises other than those contained in the agreement; he had conferred with counsel about how the sentencing guidelines might apply in his case; he understood that neither the Government's sentence recommendation nor the guidelines were binding on the Court, the Court had authority to impose a sentence more or less severe than the guidelines range, and that such a sentence would not be a basis to withdraw his guilty plea.  (Plea Tr. at 3-6, 8).

The Court also went into great detail about the appellate and collateral rights Movant was waiving in the agreement, after which Movant stated that he understood.  (*Id.* at 6-8).  After the Government set forth the factual basis for the plea, Movant told the Court that he agreed with that synopsis, and affirmed that he was, in fact, guilty of the offenses in the indictment to which he was entering a plea.  (*Id.* at 8-14).  After receiving confirmation from Ms. Moorman that after conferring with

Movant she believed that he was knowingly, voluntarily, and intelligently waiving his Constitutional rights, the Court accepted Movant's guilty plea. (*Id.* at 14).

Before sentencing, the PSR was prepared, which included several paragraphs describing Movant's offense conduct. (PSR ¶¶9-26). Movant's attorney objected to paragraphs 41 and 42, each of which would add two levels to Movant's adjusted offense level. (*Id.* ¶¶41, 42). Specifically, paragraph 41 the PSR indicated that the offense level should be increased by two levels pursuant to §2A3.1(b)(4)(B) because the victim sustained serious bodily injury. (PSR ¶41). In paragraph 42, the PSR provided a two-level increase under U.S.S.G. §3A1.3 because the victim was restrained in the course of the offense. (*Id.* ¶42).

During the sentencing hearing on April 13, 2021, the Court overruled Movant's objection to the §2A3.1(b)(4)(B) two-level increase based on serious bodily injury, but sustained the objection for the §3A11.3 two-level enhancement for the restraint, and as a result Movant's offense level was increased two levels.[5] (Doc. 118 ("Sent. Tr.") at 7-9). The final adjusted guidelines level was 35 and Movant's criminal history category was III, resulting in a custody range of 210-262 months. (*Id* at 9-12). The Court sentenced Movant to a concurrent 210 months of

---

[5] At sentencing, the Assistant U.S. Attorney reported to the Court that Movant debriefed the Government after his guilty plea, and based on that conversation he felt that it would be unfair to ascribe the restraint to Movant for the sexual assault. (Sent. Tr. at 8-9).

imprisonment on each count – the lowest end of the guidelines range. (*Id.* at 18; Doc. 82).

Movant filed a notice of appeal and Linsey Morris Barron subsequently was appointed to represent him. (Docs. 89, 103). On March 14, 2022, Ms. Barron filed a motion to dismiss the appeal without prejudice and indicated that after discussing the appeal with Movant, Movant decided that he no longer wished to pursue the appeal and had instructed Ms. Barron to file a motion to dismiss. *See United States v. Adams*, No. 21-12860, Doc. 22 (11th Cir. Mar. 14, 2022) (PACER). The Eleventh Circuit granted the motion to dismiss on March 16, 2022. *Id.* at Docs. 23, 24 (11th Cir. Mar. 16, 2022) (PACER); (*see also* Doc. 121).

Movant executed a *pro se* motion to vacate his sentence pursuant to 28 U.S.C. §2255 on March 28, 2022 [Doc. 122], and subsequently filed an amended motion and two supplemental motions [Docs. 125, 128, 129].[6] Therein, Movant raises the following claims for relief: (1) he is actually innocent of the conspiracy to commit

---

[6] Movant's supplemental §2255 motions are virtually identical, except for his statement in the first supplemental motion that no medical evidence of sexual abuse was ever produced. (Doc. 128-2). However, in the second supplemental motion he acknowledged that medical records were, in fact, produced, but that D.P.'s statements were not credible. (Doc. 129-2). Movant did not raise an ineffective assistance of counsel claim in either motion related to any such medical records.

robbery and sexual abuse;[7] (2) counsel was constitutionally ineffective for not pursuing Movant's claim of actual innocence; and (3) counsel was ineffective by not pursuing a dismissal based on a violation of Movant's speedy trial rights under 18 U.S.C. §3161(c)(1).  (Docs. 122, 125, 128, 129).  For the following reasons, **IT IS RECOMMENDED** that the instant §2255 motion be **DENIED**.

## II.   Standard of Review

Congress enacted §2255, authorizing convicted criminal defendants to file a motion to correct sentences that violate federal law, with the intention that the statute serve as the primary method of collateral attack on federally imposed sentences. *United States v. Jordan*, 915 F.2d 622, 625 (11th Cir. 1990).  Pursuant to §2255, individuals sentenced by a federal court can attack the sentence imposed by claiming one of four different grounds: "(1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack." *Id.* (citations omitted); *see generally United States v. Hayman*, 342 U.S. 205 (1952).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166

---

[7]     Movant repeatedly states that he is actually innocent for various reasons; however, for the sake of brevity the undersigned simply addresses actual innocence as one claim.

(1982).   Movant must establish that the facts surrounding his claim present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Bowen v. Johnston*, 306 U.S. 19, 27 (1939).

The Court should order an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255(b); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (noting that although a movant is entitled to evidentiary hearing if relief is warranted by the facts he alleges, a hearing is not required if the record conclusively demonstrates that no relief is warranted).   As discussed below, Movant's §2255 motion and the record in this case conclusively show that Movant is not entitled to relief in connection with his claims. Thus, no evidentiary hearing is required.

III.   Analysis

A.   Actual Innocence

The undersigned first notes that in the original §2255 motion [Doc. 122] and the amended motion [Doc. 125], Movant argues that, *inter alia*, he is actually innocent of conspiracy to commit robbery, which he erroneously claims is one of the counts to which he entered a plea.  (Doc. 122 at 4-8; Doc. 125 at 7-8).  As discussed previously herein, however, Movant entered a plea to the robbery count, not the charge of conspiracy to commit robbery.

Movant also claims that he is actually innocent of all of his convictions based on *Borden v. United States*, __ U.S. __, 141 S. Ct. 1817 (June 10, 2021) and *United States v. Taylor*, __ U.S. __, 142 S. Ct. 2015 (June 21, 2022).   In *Borden*, the Supreme Court held that offenses that can be committed with a mens rea of recklessness cannot qualify as "violent felonies" under 18 U.S.C. §924(e), the Armed Career Criminal Act ("ACCA").[8]   The Supreme Court held in *Taylor* that attempted Hobbs Act robbery did not qualify as a crime of violence under 18 U.S.C. §924(c).[9]   Movant relies on these cases and argues that none of his crimes constituted "violent offenses" because they only require a mens rea of recklessness.   (*See generally* Docs. 122, 125, 127).   The argument is difficult to follow, but Movant appears to contend that because his offenses could not be considered violent offenses, he should not have received the two-level enhancement based on U.S.S.G.

---

[8]      Under the ACCA, the sentence for a person convicted of 18 U.S.C. §922(g), *i.e.,* felon in possession of a firearm, increases from a ten-year to a fifteen-year maximum if that person has three previous convictions for a violent felony or a serious drug offense.  18 U.S.C. §924(e)(1).

[9]      Section 924(c) authorizes an enhanced sentence to anyone convicted of using a firearm in connection with a crime of violence.  A felony qualifies as a crime of violence if it has as an element "the use, attempted use, or threatened use of physical force against the person or property of another."  18 U.S.C. §924(c)(3)(A).

§2A3.1(b)(4)(B) for the victim suffering "serious physical injury."[10]   Movant's argument is misplaced.[11]

First, neither *Borden* or *Taylor* apply here, as Movant's sentence was not increased under the ACCA for having three previous "violent felony" convictions or pursuant to §924(c) for a "crime of violence" – both of which are connected with a crime involving a firearm which Movant's offenses did not involve.   Instead, Movant's sentence for sexual abuse was enhanced under U.S.S.G. §2A3.1(a)(4)(B) because the victim suffered "serious physical injury," and *Borden* and *Taylor* are inapposite.

Moreover, to the degree that Movant claims that he is actually innocent and that his guilty plea was not made knowingly, intelligently, or voluntarily, he swore under oath during the plea hearing that the opposite was true.   Those sworn

---

[10]   Movant erroneously states that his sentence was enhanced by two levels under U.S.S.G. §2A1.3, which applies to voluntary manslaughter and is not relevant here.

[11]   The undersigned also notes that in order to demonstrate actual innocence, Movant must show factual innocence rather than legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Rozelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1012-15 (11th Cir. 2012).   Movant's challenge to the two-level enhancement, however, is one of legal innocence. *Cf. McKay v. United States*, 657 F.3d 1190, 1197-1200 (11th Cir. 2011) (holding claim that a prior conviction did not qualify as a violent crime to enhance the prisoners' sentence under U.S.S.G. §4B1.1 was a claim of legal, rather than factual, innocence).   Movant has provided no proof that he is, in fact, factually innocent, and instead just provides conclusory statements in connection therewith.

statements "constitute a formidable barrier in any subsequent collateral proceedings" because "there is a strong presumption that statements made during the plea colloquy are true." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also Martin v. United States*, 949 F.3d 662, 670 (11th Cir. 2020) (stating that statements made during plea colloquy "are afforded great weight"); *United States v. Stitzer*, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) ("[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely[.]").  Movant has provided no evidence whatsoever to overcome the strong presumption of the veracity of his sworn statements that he voluntarily entered into the plea and that he was, in fact, guilty of the two charges to which he entered his plea.  Thus, Movant has not demonstrated that his plea was anything other than knowingly and voluntarily entered, and accordingly, he has not demonstrated that he is actually innocent.

B.    Ineffective Assistance Of Counsel

Movant also argues that counsel was ineffective because she did not pursue his actual innocence and instead allowed him to enter a guilty plea, and because she failed to pursue dismissal of the indictment for a violation of his speedy trial rights.[12] Neither of these claims have merit.

---

[12]    In his reply to the Government's response, Movant states that counsel also was ineffective for not pursuing objections to PSR ¶¶41 and 42, causing Movant "almost two decades more of his life in a Federal prison."  (Doc. 127 at 2).  As

1.    *Ineffective Assistance Of Counsel Standard*

The standard for evaluating ineffective assistance of counsel claims was set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Green v. Nelson*, 595 F.3d 1245, 1239 (11th Cir. 2010). "An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 688). To establish deficiency, a petitioner is required to establish that "counsel's representation 'fell below an objective standard of reasonableness.'" *Wiggins* 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688). To establish prejudice, a petitioner must prove a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 750 (11th Cir. 2010).

"An attorney's performance is not deficient in hindsight just because he or she made one choice versus another." *Scott v. United States*, 890 F.3d 1239, 1259 (11th Cir. 2018); *see also Willis v. Newsome*, 771 F.2d 1445, 1447 (11th Cir. 1985) ("Tactical decisions do not render assistance ineffective merely because in retrospect

---

discussed in Section I.B., however, counsel objected to both enhancements contained in PSR ¶¶41 and 42, one of which was successful. (PSR ¶¶41, 42; Sent. Tr. 8-9). Because counsel did, in fact, object to these enhancements, she could not have been ineffective for failing to do so.

it is apparent that counsel chose the wrong course.").  An ineffective assistance claim should be examined based on the "'totality of the circumstances[,]'" *McCoy v. Newsome*, 953 F.2d 1252, 1262 (11th Cir. 1992) (citations omitted), and the court may "dispose of [the] ineffectiveness claim[] on either of its two grounds." *Atkins v. Singletary*, 965 F.2d 952, 959 (11th Cir. 1992); *see also Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Strickland*'s two-pronged test applies to counsel's representation of a defendant in connection with a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  To demonstrate counsel's ineffective assistance after entering a plea, the Movant must show that his "counsel's constitutionally ineffective performance affected the outcome of the plea process[,]" *id.* at 59, by "convinc[ing] the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).  *See also Jackson v. United States*, 463 F. App'x 833, 835 (11th Cir. 2012) ("If [the movant] cannot establish both that counsel misadvised him and that a decision not to plead guilty would have been rational, his claim that his guilty plea was not knowing and voluntary due to counsel's ineffectiveness will fail.").  "[A] petitioner's bare allegation that he would not have pleaded guilty is insufficient to establish prejudice

under *Strickland*."  *Roach v. Roberts*, 373 F. App'x 983, 985 (11th Cir. 2010) (per curiam) (citation omitted).

      2.     <u>*Trial Counsel Did Not Provide Ineffective Assistance.*</u>

      a.     *Failing To Raise Movant's Actual Innocence*

As discussed more thoroughly in Section III.A., because Movant has not met the heavy burden of overcoming the presumption of veracity of his sworn statements during the plea colloquy – *i.e.,* that he voluntarily entered into the plea because he was guilty – counsel could not have been deficient for not pursuing an actual innocence claim.  *See, e.g., Lynch v. United States*, No. 16-16243-C, 2017 WL 4570524, at *8 (11th Cir. June 26, 2017) ("Lynch has not shown that he is actually innocent of the conspiracy charge, and therefore cannot show that counsel was deficient for allowing him to plead guilty to that charge or that he suffered prejudice as a result.").  Accordingly, Movant is not entitled to relief in connection with this ineffective assistance claim.

      b.     *Failing To Move To Dismiss The Indictment*

Counsel also was not ineffective by failing to move to dismiss the charges against Movant based on an alleged speedy trial violation under 18 U.S.C. §3161(c)(1), the Speedy Trial Act (the "Act").  That section of the Act requires that a defendant be brought to trial within seventy days from the later of the filing of the

indictment or the date that the defendant appeared before a judicial officer of the court in which the charge is pending.

That seventy-day period is tolled during the time that pretrial motions are pending. 18 U.S.C. §3161(h)(1)(F); *see also United States v. Dowdell*, No. 22-11822, 2023 WL 3773715, at *4 (11th Cir. June 2, 2023) ("The Act excludes from the 70-day calculation certain periods of delay, including the 'delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion.'") (quoting 18 U.S.C. §3161(h)(1)(D)). The seventy-day period also is tolled during a continuance – if the continuance is granted by the judge on his own motion or at the request of either party, and if the judge "granted such continuance on the basis of [the judge's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial[,]" – so long as the court sets forth the reasons for those findings. 18 U.S.C. §3161(h)(7)(A). Finally, a superseding indictment does not reset the speedy trial clock for offenses charged in the original indictment. *See United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008) ("[N]either the filing of a superseding indictment, nor the dismissal of an original indictment followed by the filing of a new indictment, resets the speedy-trial clock.").

Here, Movant's first appearance was on July 26, 2019, which was later than when he was indicted. (Docs. 1, 14). Thus, under the Act, the seventy-day period began the next day, on July 27, 2019. *See United States v. Yunis*, 723 F.2d 795, 797 (11th Cir. 1984) (stating that in calculating includable time for purposes of the Act, both the date on which the event occurs or a motion is filed and the date on which the motion is disposed of are excluded). The Court granted Movant's request for a continuance of the pretrial conference on August 15, 2019 – at which point eighteen days had run – and excluded August 15, 2019, through September 3, 2019 from the speedy trial calculations. (Doc. 19). Beginning on September 4, 2019, the seventy-day period included another seven days, and on September 11, 2019, the Court certified Movant's case ready for trial. (Doc. 35). Thereafter, the Court granted three continuances of the trial date [Docs. 43, 44, 46] and excluded from speedy trial calculations September 11, 2019, through September 28, 2020, the last date for which the trial was set [Doc. 46].

Meanwhile, on March 16, 2020, this Court issued the first of several emergency pandemic-related orders, which tolled the remainder of the speedy trial clock from March 16, 2020 through the date of Movant's guilty plea on December 8, 2020. (Docs. 58, 60, 63, 64, 66, 68, 69, 70). For purposes of the Act, therefore, on the date Movant entered his plea all but twenty-five days were excluded from speedy trial calculations, and Movant's plea was entered well within the seventy-

day period.  As a result, there was no speedy trial violation, and Movant's counsel could not have been deficient for failing to seek dismissal based on any such meritless claim.  *See Franks v. GDCP Warden*, 975 F.3d 1165, 1170 (11th Cir. 2020) ("[W]e have repeatedly held that if a particular claim itself is without merit," any failure of counsel to raise or adequately pursue it "'cannot constitute ineffective assistance of counsel.'") (citations omitted); *Baxter v. United States*, 140 F. App'x 82, 83 (11th Cir. 2005) (finding counsel was not ineffective for failing to raise a speedy trial violation when there was no merit to any such claim).[13]

### 3.    The Collateral Waiver Bars Any Sentencing Claims.

To the degree that this Court could construe any of Movant's arguments as challenges to his sentence, he cannot raise any such challenges here because the collateral waiver in the plea agreement provides that Movant may not collaterally attack his convictions and sentences on any ground.  (Plea Agreement ¶27).  Since Movant knowingly and voluntarily entered into the plea agreement containing that waiver, it is valid and enforceable.  *See United States v. Arce*, 718 F. App'x 931, 933-34 (11th Cir. 2018) (per curiam); *United States v. Santiesteban*, 587 F. App'x

---

[13]    Even if Movant's speedy trial rights were violated, however, he has failed to demonstrate prejudice because a dismissal of the indictment would have been without prejudice.  *See Chambliss v. United States*, 384 F. App'x 897, 899 (11th Cir. 2010) (finding speedy trial violation did not prejudice defendant because the government would have reindicted him on the same charges and the outcome of the proceedings would not have been different).

548, 551 (11th Cir. 2014) (per curiam); *United States v. Wilson*, 445 F. App'x 203, 207 (11th Cir. 2011) (per curiam); *United States v. Ramos*, 433 F. App'x 893, 895 (11th Cir. 2011) (per curiam); *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005); *United States v. Bushert*, 997 F.2d 1343, 1350 (11th Cir. 1993).

"[O]ne of the keys to enforcing a sentence appeal waiver is that the defendant knew he had a 'right to appeal his sentence and that he was giving up that right.'" *Bushert*, 997 F.2d at 1350 (citations omitted).  In order to prevail on an argument to enforce a waiver, the Government must show that either "(1) 'the district court questioned the [movant]' about the waiver; or (2) the record makes clear 'that the [movant] otherwise understood the full significance of the waiver.'" *Wilson*, 445 F. App'x at 207 (quoting *Bushert*, 997 F.2d at 1351); *Ramos*, 433 F. App'x at 895-96; *United States v. Johnson*, 541 F.3d 1064, 1066 (11th Cir. 2008).  In this case, the Government has demonstrated both.  Consequently, any challenge to Movant's sentence is precluded by the waiver.  *See, e.g., King v. United States*, 41 F. 4th 1363, 1370 (11th Cir. 2022) ("But for a few narrow exceptions, a defendant that waives the right to collaterally attack his sentence is bound by that decision."); *see also United States v. Bijou*, No. 21-14443, 2023 WL 1991784, at *2 (11th Cir. Feb. 14, 2023) ("Here, Bijou's substantive arguments challenging the enhancements and

reasonableness of her sentence are barred by the appeal waiver in her plea agreement.").[14]

## IV.  Conclusion

Based on the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Ramont Lamont Adams's motion to vacate his sentence [Docs. 122, 125, 127, 128, 129] be **DENIED WITH PREJUDICE**.

## V.  Certificate Of Appealability

Pursuant to Rule 11 of the Rules Governing §2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   28 U.S.C. §2253(c)(2) provides that a certificate of appealability ("COA") may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  In order for the certification requirement to fulfill its function of weeding out frivolous appeals, a court should not automatically issue a COA; rather, the applicant must prove "something more than the absence of frivolity" or "the existence of mere

---

[14] Any such claims also would be procedurally defaulted since Movant did not raise them on direct appeal. *See Hill v. United States*, 569 F. App'x 646, 647 (11th Cir. 2014) (per curiam) ("A claim is procedurally defaulted, such that the prisoner cannot raise it in a collateral proceeding, when a defendant could have raised an issue on direct appeal but did not so so.").  Since the Government did not raise this issue, the undersigned will not further discuss it.

'good faith' on his or her part." *Miller-El v. Cockrell*, 537 U.S. 322, 338 (2003) (citations omitted).

Movant need not prove, however, that some jurists would grant the §2255 motion. *See id.* "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *See Lamarca v. Secretary, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009) (citing *Miller-El*, 537 U.S. at 325). In other words, Movant need only demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Based on the foregoing discussion, reasonable jurists would not find "debatable or wrong" the undersigned's determination that Movant has not demonstrated actual innocence or ineffective assistance of counsel, and any sentencing claims are barred by the valid and enforceable collateral waiver. *See Slack*, 529 U.S. at 484.

Accordingly, **IT IS FURTHER RECOMMENDED** that a COA be denied.[15]

The Clerk is **DIRECTED** to terminate the reference to the undersigned Magistrate Judge.

    **IT IS SO RECOMMENDED** this 31st day of August, 2023.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

---

[15]   As provided in the attached service order, Movant may file written objections to this Report and Recommendation ("R&R") within fourteen (14) days of service pursuant to 28 U.S.C. §636(b)(1).  If Movant does not file any objections, the R&R may be adopted as the order of the District Court and any appellate review of the factual and legal findings will be limited to plain error review under Eleventh Circuit Rule 3-1.